**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                                    CR No. 12-1488 RB

CRUZ GARCIA,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on Defendant Cruz Garcia's *Motion to Suppress*, (Doc. 17), and the *United States' Response to Defendant's Motion to Suppress*, (Doc. 19). The Honorable United States District Judge Robert C. Brack referred the *Motion to Suppress* to this Court for proposed findings and a recommended disposition. (Doc. 23). Mr. Garcia is currently charged with being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 12 at 1). The ammunition was discovered during a pat-down search of Mr. Garcia's person by an officer in the Roswell Police Department during a traffic stop in February of 2012. Mr. Garcia contends that the search was unconstitutional and that the ammunition should be suppressed. (*See, generally*, Doc. 17).   The Court heard oral arguments on the motion on August 30, 2012, and, at the Court's direction, both parties have submitted proposed *Findings of Fact and Conclusions of Law.* (*See* Doc. 36; Doc. 37). The Court, having considered the motion, the relevant law, and otherwise being fully advised in the premises, **RECOMMENDS** that Defendant's *Motion to Suppress* be **DENIED**.

I.   **BACKGROUND**

Officer Barton Devos is a police officer with the City of Roswell Police Department ("RPD") and he has been employed with RPD for approximately three years. (*Transcript of Hearing, 8/30/12*, at 7-8).[1] On February 4, 2012, at approximately 7:45 pm, Officer Devos was patrolling alone in his squad car and traveling northbound on Monroe street. (*Id*. at 13-14). He observed a green Hyundai sedan traveling southbound on Monroe and Officer Devos saw that there were several large cracks in the Hyundai's windshield. (*Id*. at 14). Officer Devos had already stopped the Hyundai at least once in the past and issued a citation for driving with a cracked windshield. (*Id*.).

Officer Devos activated his emergency lights and pulled over the Hyundai. The car was being driven by an individual that he didn't recognize and Cruz Garcia was sitting in the passenger seat. (*Id*. at 17). For reasons that will be discussed in greater detail, *infra*, Officer Devos was acquainted with Mr. Garcia, having previously encountered him in Roswell several times and having arrested him two weeks earlier. Officer Devos found that Mr. Garcia was acting nervously, refusing to make eye contact with the officer and playing with his hands. (*Id*. at 17-18). Officer Devos suspected Mr. Garcia might be trying to conceal something but did not know what. (*Id*. at 18-19).

The driver identified himself as Gilbert Romero but did not provide any identification. (*Id*. at 18-20; 33-34). Officer Devos ran Mr. Romero's name and the dispatcher informed him that Mr. Romero's driver's license had been suspended. (*Id*. at 19). Officer Devos advised Mr. Romero that his license was suspended and he then arrested Mr. Romero and

---

[1]  All further references to the transcript of the hearing shall be cited as "TR"

placed him in the backseat of the police cruiser. (*Id.* at 19-21; 39-41). Upon being placed in the cruiser Mr. Romero explained he wasn't actually Gilbert Romero and that his name was Joe Maner. (*Id.* at 19-20). Mr. Maner advised that his identification was in the side pocket of the Hyundai's driver's door. (*Id.* at 20). Officer Devos ran Mr. Maner's name and discovered that Mr. Maner's driver license was also suspended and that there was an "arrest clause" for him. (*Id.*). An "arrest clause" means that the individual has previously been convicted of a DUI and, pursuant to RPD policy, any subsequent arresting officer is required to tow the vehicle. (*Id.*). Officer Devos was also required by regulation to perform an inventory search of the car prior to it being towed so as to insulate the department from claims that valuables were stolen from the car following the arrest. (*Id.* at 20-21).

Officer Devos approached the green Hyundai in order to begin the inventory search. He again noticed that Mr. Garcia was acting nervous; fidgeting with his hands and refusing to make eye contact with Officer Devos. (*Id.* at 86). He instructed Mr. Garcia to get out of the car and, before beginning the inventory search, decided to perform a pat-down frisk of Mr. Garcia to ensure he was not carrying any weapons. He instructed Mr. Garcia to put his hands on top of the car and then ran his hands down Mr. Garcia's legs. (*Id.* at 22-23). He felt what he thought was a gun magazine in Mr. Garcia's right front pocket and, when he asked Mr. Garcia what was in the pocket, Mr. Garcia replied, "a gun clip." (*Id.*). Mr. Garcia placed the gun clip on the hood of the car and Officer Devos asked Mr. Garcia if he was a felon, to which Mr. Garcia replied that he was. (*Id.* at 23, 47-478).[2]

Officer Devos explained that, even though Mr. Garcia did not act in a hostile or

---

[2] Although Officer Devos eventually released Mr. Garcia that night, he was later arrested and charged with being a felon in possession of ammunition. (*Id.* at 28-29).

threatening manner during the traffic stop, he nevertheless decided to frisk Mr. Garcia before conducting the inventory search because he felt that Mr. Garcia might be dangerous and might gain access to a weapon. (*Id.* at 23-24). Officer Devos provided several reasons for being concerned for his safety. First, Officer Devos felt he was in a vulnerable position because he would be turning his back to Mr. Garcia while conducting the inventory search and did not have any other officers backing him up. (*Id.* at 27). Second, other RPD officers had informed him that Mr. Garcia had a violent criminal history. (*Id.* at 11, 24-25). Specifically, Mr. Garcia had been convicted of aggravated assault with a deadly weapon in 2000 and attempted armed robbery and aggravated assault with a deadly weapon in 2003. (*Id.* at 24-25, 29). Third, Officer Devos knew that Mr. Garcia was a heroin user and, "with heroin comes needles and a needle can very easily stab someone in the neck." (*Id.* at 25). Fourth, he found Mr. Garcia's behavior during the traffic stop suspicious because Mr. Garcia was acting nervously and did not react when Mr. Maner provided Officer Devos with a false name. (*Id.* at 26). Officer Devos believed that Mr. Garcia's failure to react to Mr. Maner's deception might mean that Maner and Mr. Garcia were jointly engaged in some kind of illegal activity. (*Id.*). Finally, Officer Devos thought that Mr. Garcia might be dangerous because he had arrested Mr. Garcia several weeks earlier and had to deploy his taser during the arrest to subdue Mr. Garcia. A brief description of the arrest is in order.

The arrest in question occurred on January 21, 2012, approximately two weeks before the traffic stop which is the subject of the instant motion. (*Id.* at 54). Officer Devos went to Mr. Garcia's house because there was a warrant for Mr. Garcia's arrest for failing to appear in court for an unrelated traffic matter. (*Id.* at 9, 12, 74). Officer Devos saw Mr. Garcia sitting on his front porch and Officer Devos ordered him to stay where he was . (*Id.*

4

at 9). Mr. Garcia instead ran into his house and fled through the back door into an alley. (*Id.*). Officer Devos pursued Mr. Garcia with the two men running parallel to each other - Mr. Garcia in the alley and Officer Devos out in the street. (*Id.* at 9, 58-60). Mr. Garcia turned and ran northbound on Grand Avenue and, as Officer Devos pursued approximately fifty feet behind, he saw Mr. Garcia drop what appeared to be a small bag containing a white substance. (*Id.* at 10, 60-61). Mr. Garcia turned around, retrieved the bag and continued to run eastbound into the backyard of a residence at 300 East Reed street. (*Id.* at 10).[3] Mr. Garcia tripped on a metal fence on the ground in the backyard of the residence which enabled Officer Devos to close the distance between them but then he also tripped on the fence and cut his nose during the fall. (*Id.* at 10). Both men stood up and continued the pursuit around to the front of the residence. Mr. Garcia went to the front door of 300 East Reed and tried to open it but it would not open. (*Id.* at 10). Officer Devos claims that Mr. Garcia then turned around and adopted a "fighting stance" with his fists clenched. (*Id.* at 10-11, 67). The stance consisted of Mr. Garcia standing with his fists clenched at his sides, down by his waist. (*Id.* at 80). Officer Devos deployed his taser, striking Mr. Garcia in the chest and stomach, and he left the taser prongs in Mr. Garcia and warned him not to move or he would recycle the taser. (*Id.* at 11-12). Mr. Garcia complied and he was then arrested by other officers responding to the scene. (*Id.*).

Upon cross-examination, Officer Devos admitted that he made no mention of Mr. Garcia taking a fighting stance in the report he wrote immediately following the January 21 arrest. (*Id.* at 69-70). Moreover, in the "Use of Force Report" prepared by Officer Devos on

---

[3] Although Officer Devos saw Mr. Garcia pick up the bag with the white substance, no such bag or substance was ever recovered from Mr. Garcia following his arrest. (TR at 98-99).

January 21, Officer Devos indicated that he deployed his taser because Mr. Garcia "attempt[ed] to flee." (*Id.* at 74-76). The form provides a "subject resistance" category, included headings such as "empty hand defensive resistance," "empty hand active resistance," and "aggressive resistance," but Officer Devos did not check any of those boxes in compiling his report. (*Id.* at 76). On re-direct, Officer Devos explained that he didn't check any of the "subject resistance" boxes in the use of force report because the report was merely intended the reflect the *primary* reason he used force and he felt that the primary reason for deploying the taser was to prevent Mr. Garcia from fleeing further. (*Id.* at 91-92). Officer Devos did memorialize Mr. Garcia's aggressive actions from January 21 in the report he wrote following the February traffic stop when the gun clip was discovered. (*Id.* at 88-89).

Following the testimony regarding the January 21 arrest, Officer Devos was asked to summarize why he felt that Mr. Garcia might pose a risk to his safety during the traffic stop on February 4, 2012. Officer Devos stated that, in addition to the flight and arrest which occurred on January 21, his concerns for officer safety were based on

> [Mr. Garcia's] criminal history with violent felonies involving weapons, based on the fact that I was on the traffic stop by myself, and based on the fact that he was a known drug user and many drug users are often known to be armed . . . [and] based on the fact that he was avoiding eye contact, didn't say nothing when the driver gave me a false name, moving his hands around and his nervous behavior.

(*Id.* at 95-96).

## II.   <u>Standard of Review</u>

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It also commands that "no Warrants shall issue, but upon probable

cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The protections of the Fourth Amendment are enforceable against state actors through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

The deciding factor in reviewing searches under the Fourth Amendment is reasonableness. In *Terry v. Ohio*, the United States Supreme Court differentiated between searches incident to a lawful arrest and searches based on the more ephemeral concept of "reasonable suspicion." *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968). The Court held that police officers may lawfully seize a citizen under the Fourth Amendment if the officer has a reasonable and articulable suspicion that criminal activity has occurred or is about to occur. *Id.* at 21; *United States v. Callarman*, 273 F.3d 1284 (10th Cir. 2001). "Although reasonable suspicion requires an officer to act on something more than an inchoate and unparticularized suspicion or hunch, the level of suspicion required is considerably less than proof by a preponderance of the evidence or that required for probable cause." *United States v. Whitley*, 680 F.3d 1227, 1233-34 (10th Cir. 2012) (citation omitted). A two-pronged test is used to assess the reasonableness of investigatory detentions and weapons searches. *United States v. Sanchez*, 519 U.S. 1208, 1212-13 (10th Cir. 2008). First, the court must decide whether the frisk was justified at its inception. *Id.* Second, the court must determine whether the officer's actions are reasonably related in scope to the circumstances which justified the inference. *Id.* at 1213.

As a corollary to the general rule outlined in *Terry*, the Court further held that an officer may conduct a pat-down search of a properly detained citizen if the officer

reasonably believes that the detainee is armed and dangerous. *Terry*, 392 U.S. at 24; *United States v. Brakeman*, 475 F.3d 1206, 1212 (10th Cir. 2007). In the context of a traffic stop, "[a] weapons search . . . is justified when there is reasonable suspicion based on specific and articulable facts that the subject may be dangerous and may gain immediate control of weapons." *Brakerman*, 519 U.S. at 1213 (citing *United States v. Palmer*, 360 F.3d 1243, 1246 (10th Cir. 2004)). The reasonableness of an officer's belief about a detainee's dangerousness depends on the totality of the circumstances. *United States v. Wood*, 106 F.3d 942, 946 (10th Cir.1997).

### III.    Analysis

Mr. Garcia first argues that the traffic stop itself was unconstitutional because Officer Devos "did not have an objectively reasonable suspicion that the law was being violated when he pulled over the [Hyundai]." (Doc. 17 at 2-3). The Court disagrees and finds that the stop was justified at its inception. Officer Devos saw that the Hyundai's windshield was cracked in several places and felt that these cracks impeded the driver's ability to see the road properly and made the car unsafe to drive. (TR at 15-18). Officer Devos felt that the vehicle violated both a city and state ordinance regarding the safe operation of vehicles when he pulled the car over. (*Id.* at 17-18). *Terry* and its progeny require no more. *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) ("A traffic stop is justified at its inception if an officer has (1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction.").

The critical question is whether Officer Devos reasonably believed that Mr. Garcia might be armed and dangerous when he decided to initiate a *Terry* frisk prior to conducting

8

the inventory search. Officer Devos provided a number of reasons why he was worried Mr. Garcia might be armed and the Court will address those in turn. It is important to note that the Court may not "evaluate and reject each factor in insolation" but must consider the reasons as they relate to the totality of the circumstances facing Officer Devos. *United States v. Johnson*, 364 F.3d 1185, 1189-90 (10th Cir. 2004); *United States v. Arvizu*, 534 U.S. 266, 267 (2002) (Holding that courts may not engage in a "divide-and-conquer analysis" wherein factors informing an officer's reasonable suspicion are considered in isolation and not as a totality of the circumstances).

a.   <strong><u>Mr. Garcia's Prior Criminal History</u></strong>

Officer Devos testified that he was aware of Mr. Garcia's violent criminal past at the time of the traffic stop and that Mr. Garcia's past propensity for violence was one of the reasons he decided to frisk him before beginning the inventory search. (TR at 11, 24-25;95). Mr. Garcia contends that there is no evidence that Officer Devos was aware of the exact details of his criminal past at the time of the traffic stop since his testimony on direct merely reflected that a Sergeant Stanton "had advised me that [Mr. Garcia] had a violent past and had done an armed robbery . . .". (Doc. 36 at 7 (citing TR at 11)). The Court finds that this minimizes the extent of Officer Devos' testimony. Officer Devos twice testified that he knew Mr. Garcia had been involved in at least one armed robbery prior at the time of the traffic stop. (*Id.* at 11, 25). Officer Devos testified that he was "110% sure" that Mr. Garcia was a convicted felon at the time of the traffic stop and he later testified that he knew the most recent violent felony on Mr. Garcia's record was from 2003. (*Id.* at 47-48, 52-53). Therefore, while it is unclear whether Officer Devos was aware of the exact details of Mr. Garcia's criminal history at the time of the traffic stop, the Court finds that he knew that Mr.

9

Garcia was a convicted felon, that the felony was violent in nature, and that he had been involved in at least one armed robbery at the time of the traffic stop.

The Tenth Circuit has long held that a person's prior criminal history may be relevant to an officer's suspicion that the person may be armed or dangerous. *United States v. Laughrin*, 438 F.3d 1245, 1247 (10th Cir. 2006) (collecting cases). The Circuit has taken pains to emphasize that criminal history, alone, is insufficient to give rise to reasonable suspicion. *United States v. Sandoval*, 29 F.3d 537, 542 (10th Cir. 1994). However, when combined with other factors tending to show that a suspect may be armed or dangerous, "criminal history contributes powerfully to the reasonable suspicion calculus." *United States v. Santos*, 403 F.3d 1120, 1132-33 (10th Cir. 2005); *United States v. McRae*, 81 F.3d 1528, 1535-36 (10th Cir. 1996). This is particularly true when the individual's criminal background includes violent or serious crimes. *United States v. Rice*, 483 F.3d 1079, 1085 (10th Cir. 2007) ("[W]hile a criminal record, standing alone, is not sufficient to create reasonable suspicion of anything, it may be one factor of several that contributes to a finding of reasonable suspicion . . . a string of serious felonies . . . carries additional weight.").

In this case, the evidence establishes that Officer Devos was aware of Mr. Garcia's criminal history at the time of the traffic stop. He had been advised by other officers that Mr. Garcia had been involved in an armed robbery and he knew that Mr. Garcia's most recent conviction for a violent felony was from 2003. Consistent with Tenth Circuit precedent, the Court finds that Officer Devos' knowledge of Mr. Garcia's criminal past, without more, was not sufficient to give rise to a reasonable suspicion that Mr. Garcia posed a danger to his safety. However, when considered in conjunction with the other factors, discussed *infra*, the Court finds that Officer Devos' knowledge of Mr. Garcia's criminal history did properly

add to his belief that Mr. Garcia might be armed or dangerous.

### c.   Nervous\Suspicious Behavior

Officer Devos described two sets of actions on Mr. Garcia's part which he found suspicious and which might increase the chances of the traffic stop turning violent. First, he described Mr. Garcia as acting nervously throughout the encounter - he refused to make eye contact with Officer Devos and repeatedly fidgeted and played with his hands. (*Id.* at 17-18, 26, 85-86, 96). Mr. Garcia acted nervously throughout the encounter, both when Officer Devos initially stopped the car and when he returned to arrest Mr. Maner (who he thought was Mr. Romero at that time). (*Id.* at 86). Officer Devos recognized Mr. Garcia's hand-wringing as a "pacifying" response whereby a nervous person tries to calm their nerves. (*Id.* at 86). He also knew from his training that nervous gestures and hand movements are indicative of a person trying to hide something from an officer's view. (*Id.* at 18-19). Officer Devos  believed that Mr. Garcia was trying to conceal either drugs or a weapon from him. (*Id.* at 19).

The second thing that aroused Officer Devos' suspicion was that Mr. Garcia did not say anything when Mr. Maner provided a false named during the traffic stop. (*Id.* at 26). Officer Devos found this omission to be significant since it suggested that the two men might have been engaged in some kind of joint illegal activity at the time of the traffic stop. (*Id.*). He testified that it "absolutely" heightened his concern about the situation. (*Id.*).

Mr. Garcia contends that the record reflects no more than "the normal nervousness people exhibit when detained by law enforcement officers" and argues that this cannot support a reasonable suspicion that a suspect is armed or dangerous. (Doc. 36 at 8-9). The United States argues that Officer Devos was entitled to rely on his training in finding that

Mr. Garcia's actions were suspicious and that they justifiably heightened his concern for his safety. (Doc. 37 at 13-14). It further argues that Mr. Maner's effort to conceal his identity properly contributed to Officer Devos' suspicion that Mr. Garcia might be either armed or dangerous. (*Id.* (citing *Rice*, 483 F.3d at 1085)).

The Tenth Circuit has repeatedly held that nervousness is of limited significance in determining reasonable suspicion and that the government's repetitive reliance on ... nervousness ... 'must be treated with caution.'" *United States v. Fernandez*, 18 F.3d 874, 879 (10th Cir.1994) (quoting *United States v. Millan–Diaz*, 975 F.2d 720, 722 (10th Cir.1992)). Nevertheless, while nervousness alone cannot support a reasonable suspicion that a person is armed or dangerous, nervousness "is still among the pertinent factors a reasonable law enforcement officer would analyze ... and should not be completely disregarded" when reviewing the totality of the circumstances. *United States v. Johnson*, 364 F.3d 1185, 1192 (10th Cir.2004) (internal quotation omitted). The probative value of a citizen's nervousness upon being stopped by law enforcement depends both on the sheer degree of the person's nervousness and presence of other suspicious factors which, in combination with nervousness, may give rise to reasonable suspicion. *See, e.g.*, *United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir. 2001) (holding that "uncommon and extreme" nervousness is entitled to greater weight than the typical nervousness displayed by citizens who have been pulled over); *United States v. Harris*, 313 F.3d 1228, 1236 (10th Cir. 2002).

In this case, the Court finds that Mr. Garcia's nervousness, on its own, could not support a reasonable belief that he was either armed or dangerous. However, when combined with the fact that it appeared that Mr. Garcia was attempting to hide some object

from the officer's view and that Mr. Maner lied about his identity, Mr. Garcia's nervous behavior becomes somewhat more probative. *Rice*, 483 F.3d at 1085 ("A reasonable officer can infer from the behavior of one of a car's passengers a concern that reflects on the action and motivations of the other passengers.")..

### c.   Mr. Garcia's Drug Use

Officer Devos testified that he knew Mr. Garcia was a heroin user and he was concerned that Mr. Garcia might therefore have a syringe on his person which could be used as a weapon. (TR at 11, 25). The United States claims that Officer Devos' fear that Mr. Garcia might have a syringe on him was well-founded but cite no authority for its belief that it properly informed Officer Devos' fear for his safety. (Doc. 37 at 7, 13). Mr. Garcia concedes that "it is well established that . . . involvement in drug trafficking may support an inference that the person is armed and dangerous." (Doc. 36 at 7 (citing *United States v. Garcia*, 459 F.3d 1059, 1064-66 (10th Cir. 2006)). However, he contends there is no authority for the proposition that mere drug use, as opposed to drug trafficking, can support an inference that the user is armed. (*Id.* at 7-8).

The Court concurs that mere knowledge of an individual's drug use, without more, cannot provide reasonable justification to believe that the person is armed with a syringe or any other type of weapon. To adopt such a rule would mean that law enforcement officers would be entitled to frisk individuals simply because they knew that the person abused drugs. Such a rule would contradict the Supreme Court's directive that an officer must have individualized suspicion that this particular individual, as opposed to a class of persons, poses a security threat before a frisk may be effected. *Arizona v. Johnson*, 555 U.S. 323 (2009); *Ybarra v. Illinois*, 44 U.S. 85, 94 (1979). The Court therefore agrees that

Officer's Devos' belief that Mr. Garcia was a drug user did not provide him with a reasonable belief that Mr. Garcia was armed with a syringe or any other weapon.

### d.   Mr. Garcia's Flight and Arrest on January 21, 2012

Mr. Garcia and the United States dispute the relevance of the January 21 arrest with regard to Officer Devos' belief that Mr. Garcia might be armed and dangerous two weeks later. The United States focuses on the fact that Mr. Garcia fled and then took a "fighting stance" when he could flee no further and that the officer was forced to deploy his taser in order to pacify Mr. Garcia. (Doc. 37 at 4,7, 13). Mr. Garcia, on the other hand, rejects any suggestion that he acted aggressively during the arrest and instead submits that Officer Devos discharged his taser solely to prevent Mr. Garcia from fleeing.  (Doc. 36 at 8).

The Court concurs that Mr. Garcia's flight during the attempted arrest would not support a reasonable belief that Mr. Garcia was armed and dangerous during a traffic stop two weeks later. *Illinois v. Wardlow*, 528 U.S. 119, 129 n. 2 (2000) ("[F]light does not necessarily indicate that the officer is dealing with an armed and dangerous individual.") (internal quotations omitted). The fact that Mr. Garcia took a fighting stance though, would be a factor which Officer Devos could justifiably rely on in deciding to perform a *Terry* frisk. *Rice*, 483 F.3d at 1084-85 (knowledge of subject's prior violent history may increase suspicion that the person is presently armed and dangerous); *United States v. Hauk*, 412 F.3d 1179, 1192 (10th Cir. 2005) ("[F]orcible resistance by the subject of a warrant justifies an officer's suspicion [that the situation may be dangerous and] that the arrestee has not given up on crime."). The key question for the Court is whether to credit Officer Devos' testimony that Mr. Garcia in fact adopted a fighting stance or acted in a threatening manner during the flight and arrest on January 21.

14

In this case, Mr. Garcia rightly points out that Officer Devos' initial report and 'Use of Force Report' following the arrest made no reference to Mr. Garcia adopting a fighting or aggressive stance. (Doc. 36 at 8). However, the Court finds this oversight to be inconsequential as the Court credits Officer Devos' consistent testimony that Mr. Garcia did turn around and clench his fists at his side after being cornered in front of the residence at 300 East Reed street. While the act of clenching one's fists by the waist might be interpreted as more innocuous than the "fighting stance" perceived by Officer Devos - it could just as easily describe a person bracing to be shot by a taser as a person looking to fight - the Court is mindful that it must "accord deference to an officer's ability to distinguish between innocent and suspicious actions." *United States v. Gandara-Salinas*, 327 F.3d 1127, 1130 (10th Cir. 2003).

Even though the Court credits Officer Devos' belief that Mr. Garcia reacted aggressively on the porch of 300 East Reed street, the Court notes that it occurred two weeks prior to the traffic stop encounter. Moreover, Mr. Garcia was admittedly compliant and never took any threatening actions during the traffic stop. (TR at 47, 53, 79). Considered in isolation, the January 21 arrest would seem to provide minimal support for Officer Devos' belief that Mr. Garcia was armed and dangerous on February 4. However, when considered in combination with the Mr. Garcia's criminal history, his nervous and suspicious behavior, and his known drug use, the Court cannot say that Mr. Garcia's conduct on January 21 did not contribute to Officer Devos' concern that he posed a safety risk during the traffic stop.

e.   **Officer Devos Reasonably Believed that Mr. Garcia was Armed and Dangerous**

As previously noted, none of the individual factors identified by Officer Devos as suspicious were particularly indicative of Mr. Garcia's dangerousness on the evening of February 4, 2012. However, the Court must consider the totality of the circumstances when assessing the reasonableness of Officer Devos' decision to conduct a *Terry* frisk. In this case, the combined value of the factors identified by Officer Devos far outweighed the sum of their parts. The evidence showed that, i) Officer Devos was aware of Mr. Garcia's violent criminal history at the time of the stop, ii) Mr. Garcia acted nervously throughout the encounter and his nervous hand movements suggested to Officer Devos that he was trying to conceal something, iii) Mr. Garcia did not react or respond when Mr. Maner lied about his identity, and iv) Mr. Garcia reacted aggressively during the January 21 arrest only two weeks prior to the traffic encounter. When considering all of these factors in combination, the Court finds that "a reasonably prudent man in the circumstances would [have been] warranted in the belief that his safety or that of others was in danger" and that Officer Devos had a reasonable and articulable suspicion that Mr. Garcia was armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 27 (1968); *Arizona v. Johnson*, 555 U.S. 323 (2009).

**IT IS THEREFORE RECOMMENDED** that Defendant Cruz Garcia's *Motion to Suppress*, (Doc. 17), **BE DENIED**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and**

**recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE

17